THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL AGYEI *et al.*, Defendants-Appellants.

First District (2nd Division)   Nos. 1—90—3015, 1—90—3016 cons.

Opinion filed July 14, 1992.

Turner & Wolff, of Chicago (Daniel H. Wolff, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Donald T. Lyman, and Cory J. Pollack, Assistant State's Attorneys, of counsel), for the People.

JUSTICE McCORMICK delivered the opinion of the court:

Defendants, Samuel and Mary Agyei, challenge their convictions for heroin possession on grounds that police obtained the search warrant fraudulently and the prosecution violated discovery by failing to disclose an oral confession. We reverse and remand.

In January 1988, Chicago police arrested Joe Ocloo for possession of heroin. He agreed to help police find drug dealers in exchange for leniency. By January 1989, he had given police information which led to two arrests and recovery of 18 pounds of marijuana. Ocloo went to an apartment building in January 1989 to purchase heroin. After he brought the heroin to the police and told them about the transaction, police brought two complaints for search warrants for two apartments in that building, one for the apartment of Joyce and Timi Hasson, and the other for the apartment of defendants. Police found about 150 grams of brown heroin and $22,000 cash in a zipped and locked black bag in defendants' apartment.

At hearing on defendants' motion to quash the search warrant, Ocloo testified that he had known Samuel Agyei for about 10 years, when Samuel introduced him to Timi Hasson, in October 1988. He gave police only one sample of heroin, which he had obtained from the Hassons. He did not obtain heroin from defendants, he never told police that defendants gave him heroin and he did not go to defendants' apartment on January 22, 1989, prior to their arrests. When police asked him where the Hassons might keep more heroin, Ocloo told them there might be some in defendants' apartment, but he did not say he had seen heroin in that apartment.

Police Sergeant Carl Edenfield testified that on January 22, 1989, Ocloo told him he went to the Hassons' apartment to discuss the purchase of a large quantity of heroin, and the Hassons showed him a green plastic bag containing a number of baggies of brown heroin. The Hassons gave Ocloo a small quantity of the heroin to show to the persons who were to make the large purchase through Ocloo. Ocloo told Edenfield that he then went to defendants' apartment, and Samuel Agyei gave Ocloo a small sample of white heroin to show to the persons who were to purchase heroin through Ocloo. Samuel showed Ocloo a briefcase filled with clear plastic bags, apparently containing white heroin. Ocloo gave Edenfield two separate samples of heroin. The State presented evidence that its labs ran tests on two separate samples of heroin obtained from Ocloo.

Edenfield's testimony essentially matched the statements in the search warrant. The trial court found Ocloo "not *** a believable witness," so it denied the motion to quash the warrant and suppress evidence.

Defendants now argue that the trial court should have granted the motion to quash the search warrant and suppress evidence because Ocloo denied having made the statements attributed to him in the warrant and the evidence found in the search did not support the assertions made in the warrant. Police found no briefcase containing heroin in defendants' apartment, and they found no white heroin at all in the apartment.

Search warrants are presumed valid, but if a defendant makes a substantial preliminary showing that the warrant includes false statements which the affiant police officer made with knowledge of falsity, or reckless disregard for truth, the defendant is entitled to an evidentiary hearing concerning the warrant. (*Franks v. Delaware* (1978), 438 U.S. 154, 155-56, 57 L. Ed. 2d 667, 672, 98 S. Ct. 2674, 2676.) At the hearing, "the defendant must prove his claim of perjury by a preponderance of the evidence." (*People v. Lucente* (1987), 116 Ill. 2d

133, 151, 506 N.E.2d 1269.) Defendant must prove that the affiant of the search warrant (generally a police officer), rather than the nongovernmental informant, committed the perjury. *Franks*, 438 U.S. at 171, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684; *Lucente*, 116 Ill. 2d at 148.

■ Edenfield's testimony, if believed, is sufficient to support the search warrant; Ocloo's testimony, if believed, is sufficient to defeat it. The State presented in corroboration of Edenfield's testimony lab reports for two separate samples of heroin which Edenfield said Ocloo gave him before he sought the search warrants. Although there was no corroboration for the information Edenfield said Ocloo gave police, in that police found no briefcase and no white heroin in defendants' apartment, the court could infer from this that Ocloo hoped to receive credit for another arrest, so he lied to the police about defendants. The apparent falsity of the information received does not show that the warrant must be quashed where the warrant accurately states that police had reason to believe Ocloo because he had given them correct information concerning narcotics in another case.

> "In ruling on a motion to suppress, it is the trial court's province to determine the credibility of witnesses and the weight to be given their testimony, and its findings will not be disturbed upon review [unless they are] contrary to the manifest weight of the evidence." (*People v. Myers* (1978), 66 Ill. App. 3d 934, 935, 384 N.E.2d 516.)

Since the trial court found Ocloo not credible and Edenfield's testimony is not inherently incredible, the trial court's findings are not contrary to the manifest weight of the evidence. We will not disturb the decision denying the motion to quash the warrant and suppress evidence.

At the bench trial on the charge of possession with intent to deliver, Officer Richard Baranski testified that when he executed the search warrant for defendants' apartment on January 22, 1989, Mary allowed police to come in. Samuel was not at home. Baranski's partner asked Mary if she had any narcotics, and she immediately took them to the Hassons' black bag in her bedroom closet. Police broke the zipper on the locked bag and found the brown heroin and the cash. Mary never said that she knew what was in the bag. Police found no paraphernalia related to the distribution of narcotics, like scales or baggies, in defendants' apartment. Police arrested Mary and left word for Samuel to come to the police station.

Edenfield testified that when Samuel voluntarily came to the police station that evening, Edenfield read him the *Miranda* warnings

and showed him the Hassons' black bag. Samuel said he was holding the bag for Timi Hasson, and he knew it contained narcotics.

The State's responses to discovery stated that all of defendants' oral statements were included in police reports. On cross-examination, defense counsel elicited Edenfield's admission that the police reports, which Edenfield signed, did not mention this confession. Defense counsel asked no questions concerning the contents or the setting of the statement to which Edenfield testified on direct.

After completing cross-examination, defense counsel moved to strike Edenfield's testimony based on the discovery violation. The trial court agreed that the State violated discovery rules, but it held:

> "[D]iscovery had been exploited to a large extent also by way of Franks hearing. *** I am not going to exclude that testimony, but that testimony will be given to the weight I ultimately attribute to the testimony of the sergeant."

Mary testified that Joyce Hasson had left belongings in defendants' apartment twice before when she had problems with Timi. The bags she left contained clothing and jewelry, as far as Mary knew. Joyce then stayed with friends until she was able to resolve her problems with Timi. On December 15, 1988, Joyce again brought defendants a zipped and locked bag for defendants to keep for her. Mary did not know the bag contained narcotics. Joyce and Timi then went on a trip to Nigeria.

When police arrived at defendants' apartment on January 22, 1989, they asked her if she had any narcotics. She said she did not have any. The police threatened to tear up her apartment, starting with the bedroom she and Samuel shared. She then told police there was a bag in the closet which belonged to Joyce Hasson. Police said they had just been to the Hassons' apartment, and they wanted to see the bag.

Samuel testified that when he went to the police station, he told them he did not know what was in Joyce's bag. He did not know that Timi Hasson was in the drug business when he and his wife agreed to keep Joyce's bag. Samuel later agreed to help police collect information on the Hassons' drug business.

Officer Dennis Cullom testified in rebuttal that on January 4, 1990, defendants took Cullom to a motel where they said smugglers brought narcotics for distribution. They told him many of the people involved in smuggling were cab drivers. Both Samuel Agyei and Timi Hasson worked as cab drivers. Mary Agyei told Cullom that before January 1989 she accompanied Joyce Hasson on a trip to Nigeria, and Joyce smuggled narcotics into the United States when they returned.

Officer Robert O'Neill testified that when police asked defendants for help uncovering narcotics trafficking in the Nigerian community, defendants told him they knew about the trade, and they knew Timi Hasson was a large scale smuggler.

The trial court found defendants guilty of possession of heroin, but it found insufficient evidence to support the charge of intent to deliver. The court stated only that it weighed the testimony of all witnesses in light of the evidence and it resolved issues of credibility.

Defendants contend that their convictions must be reversed because the trial court improperly admitted into evidence Samuel's oral confession despite the State's failure to disclose the statement in discovery. The State contends that defendants waived objection to the violation by cross-examining Edenfield regarding his failure to mention the statement in the police report. "It is well settled in this State that the admissibility of an accused's confession or statement may be challenged by either a motion to suppress or an objection at trial, and that failure to pursue one of these devices ordinarily precludes consideration of the matter on appeal." (*People v. Calderon* (1981), 101 Ill. App. 3d 469, 477, 428 N.E.2d 571.) Defendants properly objected at trial and again specifically raised the issue in their motion for new trial.

■ To support the waiver argument, the State relies upon the Fifth District Appellate Court's statement:

" 'It has been held that where defendant objects to certain testimony on direct examination, but then questions the witness on cross-examination concerning the allegedly inadmissible testimony, any error is waived for purposes of appeal. [Citations.]' " (*People v. Bost* (1980), 80 Ill. App. 3d 933, 951-52, 400 N.E.2d 734, quoting *People v. Lewis* (1979), 75 Ill. App. 3d 259, 287, 393 N.E.2d 1098.)

The same court later held:

"[W]here the defense is responding to the State's having elicited damaging evidence over defense objections, further inquiry is not waiver." (*People v. Deal* (1989), 185 Ill. App. 3d 332, 339, 541 N.E.2d 695.)

The continuing vitality of *Bost* is suspect. *Bost* does not directly apply here because defense counsel did not ask Edenfield about the oral statement itself; instead, counsel asked about the report to establish through the State's witness that the State did not properly respond to discovery. We will not extend *Bost* to find waiver in this case.

■ The State also argues that defendants waived the objection by failing to request a continuance, citing *People v. Stewart* (1984), 105 Ill.

2d 22, 473 N.E.2d 840, and *People v. Foster* (1979), 76 Ill. 2d 365, 392 N.E.2d 6. In both of those cases, the defense found out about the statements before the State introduced them into evidence. Our supreme court found the defendants waived their objections by refusing the court's offer of a continuance. The court expressly distinguished *Foster* from a case like this one, where defense counsel first heard the oral statement when a witness testified to it on the stand: in *Foster*, "[t]here was time to request a continuance before the testimony was heard. It was the possibility of such a motion this court was referring to." (*People v. Weaver* (1982), 92 Ill. 2d 545, 559, 442 N.E.2d 255.) Since the damaging testimony was in evidence in *Weaver* before defendant could object, the court found the "defendant's failure to accept a continuance not to be fatal to her position." (*Weaver*, 92 Ill. 2d at 560.) Following *Weaver*, we find that defendant's failure to seek a continuance in this case did not constitute waiver. Since defendants objected at trial and in their post-trial motion, they preserved for review their objection to admission into evidence of the oral confession which was not disclosed in discovery.

With limited exceptions not pertinent to this case, Supreme Court Rule 412(a) provides:

"[T]he State shall, upon written motion of defense counsel, disclose to defense counsel

\* \* \*

(ii) any written or recorded statements and the substance of any oral statements made by the accused or by a codefendant \* \* \*." (134 Ill. 2d R. 412(a).)

Rule 415(g)(i) provides that if the court finds that a party has violated any of the supreme court discovery rules (134 Ill. 2d Rules 411 through 415),

"the court may order such party to permit the discovery of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances." 134 Ill. 2d R. 415(g)(i).

The legislature has mandated the proper sanction for the particular discovery violation involved in this case:

"(a) \* \* \* If the defendant has made an oral confession a list of the witnesses to its making shall be furnished.

\* \* \*

(c) No such confession shall be received in evidence which has not been furnished in compliance with subsection (a) of this Section unless the court is satisfied that the prosecutor was unaware of the existence of such confession prior to trial and that he could

not have become aware of such in the exercise of due diligence." Ill. Rev. Stat. 1989, ch. 38, par. 114—10.

The State does not deny that defense counsel properly requested all pertinent statements and that the prosecutor was aware of the statement. Although the police report submitted in response to discovery indicated that Edenfield spoke to Samuel Agyei at the police station, the report stated only that Samuel said the bag belonged to the Hassons. The report did not in any way show that defendants confessed to knowing the contents of the bag.

A list of witnesses which includes the persons who heard a defendant's oral confession, but which fails to inform defense counsel that those persons heard an oral confession, is insufficient under section 114—10(a). (*People v. Rand* (1975), 29 Ill. App. 3d 873, 876, 331 N.E.2d 15.) Edenfield admitted that the report he signed did not mention the oral confession. Therefore, as the State effectively concedes, it violated Rule 412(a) and section 114—10(a). The statute is mandatory; failure to comply renders a confession inadmissible. *Rand,* 29 Ill. App. 3d at 876; see *People v. DuPree* (1962), 26 Ill. 2d 320, 324, 186 N.E.2d 237.

Our supreme court has held that admission into evidence of a defendant's statements in violation of discovery rules requires a new trial only if "defendant is prejudiced by the discovery violation and the trial court failed to eliminate the prejudice." (*People v. Cisewski* (1987), 118 Ill. 2d 163, 172, 514 N.E.2d 97.) In assessing prejudice, this court must consider

> "[t]he strength of the undisclosed evidence, the likelihood that prior notice could have helped the defense discredit the evidence, the feasibility of continuance rather than a more drastic sanction, and the wilfulness of the State in failing to disclose." (*Weaver*, 92 Ill. 2d at 560.)

This court should also consider "the likelihood that prior notice could have helped the defense discredit the evidence." *Cisewski*, 118 Ill. 2d at 172.

■ Edenfield's testimony was powerful evidence against defendants, directly contradicting their sole defense that they did not know the contents of the bag. As defendants point out:

> "Confessions carry 'extreme probative weight,' and therefore the [improper] admission of [a] *** confession rarely is harmless error." *People v. St. Pierre* (1988), 122 Ill. 2d 95, 114, 522 N.E.2d 61.

The State's failure to disclose the confession in discovery, without explanation, when the State presented Edenfield solely to testify to the oral confession, was apparently wilful. Continuance may not have been

an appropriate remedy in the middle of the trial, when the damaging testimony was already in evidence. See *Weaver*, 92 Ill. 2d 545.

The State contends that it is unlikely that prior notice could have helped the defense, but this is unsubstantiated speculation. With notice, defense counsel could have interviewed not only Edenfield but also other officers in the area when defendant allegedly confessed, persons who discussed the case with Edenfield both before and after the alleged confession, and other persons whose testimony could undermine Edenfield's credibility. Under similar circumstances, our supreme court found a defendant's evidence of prejudice sufficient. *Weaver*, 92 Ill. 2d at 561.

The State argues that defendants were not prejudiced because the trial court in this bench trial allowed the confession into evidence for the limited purpose of affecting "the weight [the court would] ultimately attribute to the testimony of the sergeant." The court apparently meant that it would not consider the oral confession as substantive evidence, but it would consider it as affecting the weight it would give to Sergeant Edenfield's other testimony. However, Edenfield's testimony at trial on direct occupies only three record pages. He testified only to his identity, the foundation for Samuel Agyei's statement, and the content of the statement. Apart from the inadmissible confession, Edenfield gave no substantive testimony for which the court needed to assess his credibility.

In *People v. Shegog* (1976), 37 Ill. App. 3d 615, 346 N.E.2d 208, the appellate court found that the trial court improperly admitted an undisclosed statement into evidence in a bench trial in violation of Rule 412 and section 114—10. (*Shegog*, 37 Ill. App. 3d at 617.) The appellate court rejected the State's contention that the error was not prejudicial, finding that the trial court considered the testimony. (*Shegog*, 37 Ill. App. 3d at 618-19.) While the trial court here did not state the evidence upon which it based its finding that defendants knew what was in the bag, it considered Edenfield's testimony for some substantive purpose, since it refused to strike it, and there was no substance to the testimony apart from the inadmissible confession. We cannot presume that the trial court did not consider the confession as substantive evidence. The trial court did not eliminate the prejudice caused by the discovery violation.

Defendants contend that the case should not be remanded for retrial because the admissible evidence was insufficient to prove them guilty beyond a reasonable doubt of possession of heroin.

> "To prove possession of a controlled substance, the State must show that defendant knew of its presence and that the substance was in defendant's immediate and exclusive control. [Citation.] Knowledge may be proved by evidence of defendant's acts, decla-

rations or conduct which fairly imply that he knew of the existence of the controlled substance at the place it was found. [Citation.] Absent circumstances creating a reasonable doubt, the fact that drugs are found on premises under defendant's control alone will support a conviction for possession. [Citation.] Exclusive possession may be established even though possession is joint or other persons have access to the premises. [Citation.] Because knowledge and possession are questions of fact, a reviewing court will not disturb the trier's findings on those issues unless the evidence is so unbelievable, improbable or palpably contrary to the verdict that it creates a reasonable doubt as to defendant's guilt. [Citation.] Finally, a reviewing court will not disturb the fact finder's resolution of conflicting evidence unless it is clearly erroneous. [Citation.]" *People v. Griffin* (1990), 194 Ill. App. 3d 286, 292, 550 N.E.2d 1244.

■ Here, the prosecution proved that police found heroin in the apartment which was under defendants' control. Defendants' evidence that the narcotics belonged to the Hassons does not defeat proof of possession because title to narcotics is irrelevant to prosecution for possession. (*People v. Kane* (1975), 31 Ill. App. 3d 500, 333 N.E.2d 247.) The fact that defendants took the bag, with the intention of protecting the bag from everyone except the Hassons, is sufficient to show their control of the narcotics.

Baranski testified that when police asked Mary if she had any narcotics, she immediately showed them Joyce's bag. Cullom and O'Neill testified that not long after their arrests, both defendants agreed to help police gather information concerning narcotics trafficking, and defendants claimed to know about the trade and the Hassons' role as major traffickers. The trial court could infer that defendants knew the contents of the Hassons' bag. The evidence is sufficient to support the convictions. Therefore, retrial of the charges against defendants will not constitute double jeopardy. See *People v. Ealy* (1986), 146 Ill. App. 3d 557, 567, 497 N.E.2d 1001.

Since we must reverse both convictions and vacate the sentences of both defendants, we do not address Samuel Agyei's argument that the trial court abused its discretion in imposing arbitrarily disparate sentences on similarly situated codefendants.

Reversed and remanded.

HARTMAN, P.J., and SCARIANO, J., concur.